**SYNERGY FINANCIAL, L.L.C, and NYNC, LLC, Plaintiffs,**

v.

**Francis A. ZARRO, Jr.; American Pastime Holdings, Inc.; Z–HeMa, LLC; Herzfeld & Rubin, P.C., and Arthur Strauss, Defendants.**

**No. CIV. 1:04CV41.**

United States District Court,
W.D. North Carolina,
Asheville Division.

July 12, 2004.

Edward L. Bleynat, Jr., Michael L. Burton, Ferikes & Bleynat, Asheville, NC, for Plaintiffs.

Francis A. Zarro, Jr., Bondville, VT, pro se.

Jim W. Phillips, Jr., Alexander Elkan, Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, Greensboro, NC, for Defendants.

## *ORDER*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the motion of Defendants Herzfeld & Rubin, P.C., and Arthur Strauss (collectively "H & R") to dismiss, which is opposed by the Plaintiffs.

## I. PROCEDURAL HISTORY

On March 9, 2004, H & R removed this action from the General Court of Justice, Superior Court Division, of Buncombe County, North Carolina. **Notice of Removal, filed March 9, 2004.** On April 5, 2004, Francis Zarro, acting in a *pro se* capacity, joined in the removal from state court on behalf of himself and Defendants American Pastime Holdings, Inc., and Z–HeMa, L.L.C.[1] **Joinder in Removal, filed April 5, 2004.** Removal is based on diversity jurisdiction and the presence of a federal claim.

## II. STANDARD OF REVIEW

"A complaint should not be dismissed for failure to state a claim upon which relief may be granted unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *De'Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir.2003).

Defendant H & R has attached as exhibits to its motion copies of certain contracts which are referenced in the complaint. Normally, in ruling on a motion to dismiss for failure to state a claim, a court may not consider matters outside the scope of the pleadings. Fed.R.Civ.P. 12(b)(6). "Because [the Plaintiffs] rel[y] on the agreement[s] in [their] complaint, it [i]s proper for the district court to consider [them] in ruling on the motion to dismiss." *Darcangelo v. Verizon Communications, Inc.,* 292

---

1. Of course, Defendant Zarro may not appear on behalf of a corporate defendant unless he is a licensed attorney. "It has been the law for the better part of two centuries ... that a corporation may appear in federal courts only through licensed counsel." *Rowland v. California Men's Colony,* 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993). As a result, the undersigned will provide an additional period of time for the corporate Defendants to appear through counsel. Failure to do so will result in entry of default as to those Defendants.

F.3d 181, 195 n. 5 (4th Cir.2002) (citing *New Beckley Mining Corp. v. Int'l Union, UMWA,* 18 F.3d 1161, 1164 (4th Cir.1994)). " '[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.' " *Stewart v. Pension Trust of Bethlehem Steel Corp.,* 12 Fed.Appx. 174, 176 (4th Cir.2001) (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998)). Here, the Plaintiffs do not dispute that the documents are authentic; their claim is that the documents were fraudulently induced. The undersigned does not find that this warrants exclusion of the documents in connection with this motion. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997).

### III. ALLEGATIONS OF THE COMPLAINT AND EXHIBITS

Synergy Financial, L.L.C. (Synergy) was formed to develop real estate into a golf course and residential development known as Walnut Cove in Buncombe County, North Carolina. Complaint, ¶ 8. In order to carry out the development, Synergy needed investors to infuse money into the project and/or financing. *Id.* Defendant Zarro represented to Synergy that he had substantial experience in golf course development and financing. *Id.,* ¶ 9. On February 6, 2001, Synergy entered into a "Letter Agreement" with American Pastime Holdings, Inc. (APH), a New York corporation which is controlled by Zarro. *Id.,* ¶ 10. On the same date, a Commit- ment Letter was executed between Synergy and Z–HeMa, a Connecticut limited liability corporation controlled by Zarro, pursuant to which Z–HeMa was to provide the financing. *Id.,* ¶ 12. On February 19, 2001, Synergy and APH entered into a "First Amendment Investment Banking and Consulting Agreement" which contained the following pertinent provisions:

> Under this Investment Banking & Consulting Agreement, APH will provide investment banking and consulting services to the Company [Synergy], including, but not limited to, a review of business plans, financial statements, projections, development plans and project schedules regarding the Project [Walnut Cove]. In addition, APH will consult with your financial and legal advisors regarding the Project.... APH will use its reasonable good faith efforts to arrange and structure First Mortgage Financing (the "Financing") for the subject property in the amount of Thirty–Six Million Five Hundred Dollars ($36,500,000) inclusive of interest reserve, taxes, insurance, any required construction bonds, approval costs, closing costs, fees, and permits, which may be incurred to complete the financing at closing and either disbursed at closing or placed in escrow for future disbursements, as appropriate, in the discretion of APH[.]
>
> . . . . .
>
> As consideration for arranging and structuring the Financing you agree to (i) pay APH an investment banking and consulting fee equal to three percent (3%) of the principal amount of the Financing, exclusive of any fees, costs or expenses charged by the Lender/Investor or any third party or parties ... and (ii) convey a 5% equity interest in the Project.
>
> . . . . .

It is also agreed that you will wire transfer to APH the sum of Fifty Thousand Dollars ($50,000) and you will wire an additional sum of One Hundred Thirty–Two Thousand Five Hundred Dollars ($132,500) to the escrow account of the law firm of Herzfeld and Rubin, P.C. for a total sum of One Hundred Eighty–Two Thousand Five Hundred Dollars ($182,-500) (one half percent (1/2 %) of the total principal amount of the Financing) upon your execution of this Investment Banking and Consulting Agreement to defray, in part, the time expended and costs and expenses incurred by APH in connection with the foregoing, which sum shall be credited against sums due to APH at closing. The parties hereto agree that the Fifty Thousand Dollars ($50,000) that is wired to APH is non-refundable. *The parties hereto further agree that the One Hundred Thirty–Two Thousand Five Hundred Dollars ($132,-500) in escrow is non-refundable (except in the event that Lender fails to fund after Borrower's Full compliance with all Lender requirements) and may be utilized by APH in its sole discretion at any time as of the date of this agreement and [H & R] is authorized to disburse these funds pursuant to instructions from APH. To the extent so disbursed, [H & R] shall have no responsibility for repayment of such funds and any refund due to Borrower pursuant to this agreement or the commitment letter shall be made directly by APH or the Lender, respectively.*

. . . . .

The parties hereto agree that in the event of a dispute between them, regarding the subject matter of this Investment Banking & Consulting Agreement, such dispute shall be resolved by arbitration in Asheville, North Carolina under the auspices of and in accordance with the rules governing commercial disputes of the American Arbitration Association.

**Exhibit C, *attached to* Defendants' Motion to Dismiss, filed April 12, 2004 (emphasis added).** The only parties to the three contracts were Synergy, APH and Z–HeMa.[2] *Id.,* **Exhibits A and B, *attached to* Defendants' Motion.**

Plaintiffs allege that they transferred a total of $565,000.00 to Zarro as fees for arranging the financing; however, Zarro never obtained any actual funding, investors or financing for the project. Complaint, ¶¶ 18, 19, 20. The complaint also alleges:

> [H & R], in the course of negotiations and discussions regarding the Walnut Cove project, provided legal counsel for the parties herein, along with counsel provided by North Carolina attorneys, and participated in the preparation of documents for the proposed funding and the transactions in general.[3]
>
> Plaintiffs were not directly responsible for the fees incurred to [H & R]; as agreed between Zarro and plaintiffs, plaintiffs would pay local North Carolina counsel for their services while Zarro and other defendants were to pay [H & R].

*Id.,* ¶¶ 23, 24 (footnote added). The allegation that the Plaintiffs were not responsible for any legal fees owed to H & R comports with its representation of Zarro and his entities. Moreover, the allegation that Plaintiffs were not responsible for H & R's fees comports with the language of

---

**2.** Thus, in the event that the contract is valid, the claims against these entities must be submitted to arbitration. 9 U.S.C. §§ 2, 3.

**3.** It is noted that the Court does not read this language as an allegation that H & R represented the Plaintiffs.

the agreement providing that any disbursement to H & R which was later to be recovered must be recouped from Zarro and/or his entities.

Plaintiffs allege that H & R knew, or should have known, that Zarro had no ability to make the arrangements for which the parties contracted and, in fact, never intended to do so. *Id.,* ¶¶ 25–28. It is also alleged that H & R owed a duty to the Plaintiffs to disclose Zarro's fraudulent scheme and his lack of financial expertise. *Id.,* ¶ 29.

Synergy wired $100,000.00 to the trust account of H & R and claims that it never authorized the release of those funds.[4] *Id.,* ¶ 32. H & R, it claims, converted the money to its own use. *Id.,* ¶¶ 33–34.

## IV. DISCUSSION

■ Plaintiffs' first cause of action is for constructive fraud. H & R argues there was no fiduciary relationship between the Plaintiffs and H & R and thus, no such claim may be raised. Plaintiffs respond that H & R represented that the $100,000 wired into H & R's trust account would be applied toward financing for the project. "That defendants H & R and plaintiffs had no formal attorney-client relationship is irrelevant and did not absolve defendants H & R from owing a fiduciary duty to plaintiffs." **Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, filed May 10, 2004, at 11.** As previously noted, the undersigned does not read the complaint or the Plaintiffs' brief as alleging that H & R provided legal representation to anyone other than Zarro and his entities. In the complaint, no specific allegations as to H & R are made in connection with the constructive fraud claim. In fact, there is no mention in any part of the complaint of Arthur Strauss except a general allegation that he was employed by H & R.

"In order to show constructive fraud, a plaintiff must establish (1) facts and circumstances creating a relation of trust and confidence; (2) which surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of the relationship; and (3) the defendant sought to benefit himself in the transaction. Where a fiduciary relationship exists between the parties, the presumption of fraud arises where the superior party obtains a possible benefit." A fiduciary duty in turn exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.

*Marketplace Antique Mall, Inc. v. Lewis,* ── N.C.App. ──, 594 S.E.2d 121, 124 (2004) (quoting *Sullivan v. Mebane Packaging Grp., Inc.,* 158 N.C.App. 19, 32, 581 S.E.2d 452, 462 (2003)) (other internal quotations omitted). "Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation." *Hunter v. Guardian Life Ins. Co. of America,* 477 N.C.App. 162, 593 S.E.2d 595, 599 (2004) (internal quotations omitted).

A constructive fraud complaint must allege facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which the defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.... In the case [here], regarding the relationship between the parties, plaintiffs merely al-

---

4. No explanation is provided in the complaint or brief as to why the sum of $100,000 was wired to H & R instead of the larger sum called for by the agreement.

lege there existed a confidential and fiduciary relationship between the parties to this transaction and the Defendants took advantage of their position of trust to the harm of the Plaintiffs and induced the Plaintiffs to [pay the money]. Plaintiffs fail to allege the requisite "facts and circumstances" which created this relationship. Although the very nature of constructive fraud defies specific and concise allegations, in light of the relevant case law, the cursory allegations in the case [here] are not sufficient to withstand a motion to dismiss.... Moreover, payment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage.

*Id.,* at 599–600 (internal quotations omitted). The undersigned cannot find that the complaint here alleges a "viable fiduciary relationship" between the Plaintiffs and H & R. *Jacobs v. Physicians Weight Loss Cen. of America, Inc.,* 2003 WL 22834340 at *6–7 (2003) (citing *Rhone–Poulenc Agro S.A. v. Monsanto Co.,* 73 F.Supp.2d 540, 546 (M.D.N.C.1999)). The Plaintiffs were represented by their own attorneys; the fact that H & R may have drafted the actual agreement ultimately signed does not create a "resulting superiority and influence" sufficient to rise to the level of a fiduciary relationship. *Id.; In re Gertzman,* 115 N.C.App. 634, 638, 446 S.E.2d 130, 134 (1994) ("The record shows that [Plaintiffs] gave funds to [H & R] as the purported attorney and promoter for [APH]."). "[P]ayment of a fee to a defendant for work done by that defendant does not by itself constitute sufficient evidence that the defendant sought his own advantage in the transaction." *NationsBank of N.C. v. Parker,* 140 N.C.App. 106, 114, 535 S.E.2d 597, 601 (2000). Indeed, "[p]arties with equal bargaining power that deal at arm's length are not in a fiduciary relationship." *Jacobs, supra* (citing *Tin Originals, Inc. v. Colonial Tin Works, Inc.,* 98 N.C.App. 663, 666, 391 S.E.2d 831, 833 (1990)). Although conclusory allegations of such a relationship have been made, that is insufficient. *Sharp v. Teague,* 113 N.C.App. 589, 597, 439 S.E.2d 792, 797 (1994) ("The complaint in this case does not meet the requirements of particularity with regard to ... constructive fraud and presents nothing more than conclusory statements with regard to these claims.").

The Plaintiffs' "claim for breach of fiduciary duty is essentially a claim for constructive fraud." *Jay Group Ltd. v. Glasgow,* 139 N.C.App. 595, 600, 534 S.E.2d 233, 237 (2000). For the same reasons that the claim for constructive fraud is dismissed, that claim is dismissed as well.

■ The second cause of action in the complaint is based on unjust enrichment. The Plaintiffs have alleged that they were not "directly responsible" for the fees incurred to H & R because Zarro was to make those payments. Complaint, ¶ 24. They also allege that H & R accepted $100,000 from them and "upon information and belief, converted same to its own use without the authorization of plaintiffs or the legal or ethical authority to do so." *Id.,* ¶ 32. When demand for the return of the money was made, H & R "failed to respond adequately[.]" *Id.,* ¶ 33. H & R "knew or should have known that the funds transferred to their trust account were to be used in furtherance of the financing of the Walnut Cove project and not to be converted to its own use contrary to the interest of Synergy." *Id.,* ¶ 34. Plaintiffs allege that they are entitled to recover "in *quantum meruit* from" H & R. *Id.,* ¶ 44.

In order to prevent unjust enrichment, a plaintiff may recover in *quantum meruit* on an implied contract theory for the reasonable value of services rendered to

and accepted by a defendant. However, it is a well established principle that an express contract precludes an implied contract with reference to the same matter. Therefore, *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties.

*Horack v. Southern Real Estate Co. of Charlotte, Inc.,* 150 N.C.App. 305, 311, 563 S.E.2d 47, 51 (2002) (internal quotations omitted). Here, there is an express contract which provided that the sum of $100,000 paid into the trust account of H & R was non-refundable, could be used by APH in its sole discretion, and H & R was specifically authorized to disburse these funds pursuant to instructions from APH. Moreover, the agreement also provided that to "the extent so disbursed, [H & R] shall have no responsibility for repayment of such funds and any refund due to Borrower pursuant to this agreement or the commitment letter shall be made directly by APH or the Lender, respectively." Exhibit C, *supra.* "Unjust enrichment 'is described as a claim in *quasi* contract or a contract implied in law.' If there is a contract between the parties, the contract governs the claim and the law will not imply a contract." *Norman Owen Trucking v. Morkoski,* 131 N.C.App. 168, 177, 506 S.E.2d 267, 273 (1998). Such is the case here and Plaintiffs are relegated to their claim for breach of contract. *Southeastern Shelter Corp. v. BTU, Inc.,* 154 N.C.App. 321, 331, 572 S.E.2d 200, 207 (2002).

Moreover, assuming *arguendo* that the contract was between Synergy and APH to furnish the sum of $100,000 to H & R in payment of its legal fees for drafting the contract, H & R "is not liable on an implied contract simply because [it] has received such services or goods." *Morkoski,* 131 N.C.App. at 178, 506 S.E.2d at 273.

The third cause of action against H & R is for conversion of the funds at issue. "Conversion is the unauthorized assumption and exercise of right of ownership over goods or personal property belonging to another to the alteration of their condition or the exclusion of the owner's rights." *Southeastern Shelter Corp., supra* (internal quotations omitted). However, where the exercise of right of ownership is done pursuant to the terms of a contract, no cause of action for conversion will lie. *Id.* Moreover, at the time the Plaintiffs made the $100,000 payment into the trust account of H & R, there had been no breach of the agreement to provide financing to Synergy.

A successful claim of conversion requires that the plaintiff maintain a right of possession of the property superior to that of the alleged converter from the time of the disputed action through the time of suit. A sale or other loss of that possessory interest extinguishes that party's cause of action for conversion. Here, [Synergy] did not retain a superior possessory interest in the [money]. A ... contract was executed, the [money was wired]. Any wrongful action did not occur until ... *after* [Synergy] had lost its possessory interest in the [money] through the execution of the [contract].

*Interstate Narrow Fabrics, Inc. v. Century USA, Inc.,* 218 F.R.D. 455, 467 (M.D.N.C. 2003) (internal quotations omitted). According to the allegations of the complaint, it was not until after the money was wired that APH failed to obtain financing for the project. Thus, conversion is not available as a remedy. Moreover, the express terms of the contract provided that the fee was non-refundable. The Court does not find that the Plaintiffs have stated a cause of action for conversion.

The Plaintiffs' seventh cause.of action is based on violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1, *et seq.* They allege that H & R took control of the funds in furtherance of Zarro's fraudulent financing scheme.

> To establish a *prima facie* case of unfair and deceptive trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive trade practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. An act is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. Some type of egregious or aggravating circumstances must be alleged and proved.... Even a party who intentionally breaches a contract is not, without more, liable for such conduct under the North Carolina Unfair Trade Practices Act. Whether an act or practice is unfair or deceptive is a question of law for the court.

*DiFrega v. Pugliese,* —— N.C.App. ——, 596 S.E.2d 456, 462 (2004) (internal quotations omitted).

The allegations of the complaint against H & R are the following:

> [H & R] represented that funds from Zarro and/or others involved in the project were in its possession to be applied toward the project. [H & R] kn[e]w or should have known that such representations were false. Plaintiffs relied upon same in going forward with the endeavor.
>
> . . . . .
>
> Plaintiffs have since learned that Zarro and his related entities have a history and course of conduct of failing to honor obligations related to proposed golf course developments and other ventures.
>
> . . . . .
>
> [H & R], in the course of negotiations and discussions regarding the Walnut Cove project, provided legal counsel for the parties herein, along with counsel provided by North Carolina attorneys, and participated in the preparation of documents for the proposed funding and the transactions in general.
>
> \* \* \* \* \* \*
>
> ■ [H & R] knew, or in the exercise of reasonable care should have known, that Zarro had no ability or intention of procuring the financing contemplated by the plaintiffs as outlined in the Commitment Letters.
>
> [H & R] knew, or in the exercise of reasonable care should have known, that APH and Z–HeMa had no ability or intention to provided the contemplated financing and, in fact, the ability to make a commitment to provide the financing did not exist.
>
> [H & R] knew, or in the exercise of reasonable care should have known, that Zarro used these entities to induce the payment of fees from plaintiffs which he never intended or was able to earn, and that he procured the transfer of such funds with the intent of defrauding plaintiffs of this money as was his practice in other fraudulent transactions.
>
> [H & R] knew, or in the exercise of reasonable care should have known, that APH and/or Z–HeMa would not honor the terms of the letter agreement and/or that the ability to make such a commitment did not exist.

Complaint, ¶¶ 17–28. Assuming *arguendo* that H & R did have an attorney-client relationship with Synergy, no cause of action based on the statute would exist. "Section 75–1.1 was enacted for the pur-

pose of providing a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State and applies to dealings between buyers and sellers at all levels of commerce." *Phillips v. Triangle Women's Health Clinic, Inc.*, 155 N.C.App. 372, 377–78, 573 S.E.2d 600, 604 (2002) (internal quotation omitted). North Carolina's statute "define[s] 'commerce' as 'all business activities, however denominated, but does not include *professional services rendered by a member of a learned profession.*' ... [T]he General Assembly expressly excludes the rendition of professional service by a member of a learned profession from the definition of 'commerce.'" *Id.* (citation omitted).

However, the complaint actually alleges that H & R provided legal services to APH and Zarro, not to the Plaintiffs who had their own attorneys. Assuming *arguendo* that H & R's receipt of $100,000 from the Plaintiffs was an unfair or deceptive trade practice which affected commerce, the Plaintiffs are unable to show proximate cause. They entered into the agreement with APH, not H & R. "One business is permitted to assert a claim for unfair and deceptive trade practices against another business when the two business are 'engaged in commercial dealings with each other.'" *Williams v. Charlotte Copy Data, Inc.*, 591 S.E.2d 598 (table), 2004 WL 193887 *2 (2004) (citing *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 520 (4th Cir.1999)). H & R was not engaged in commercial dealings with Synergy by virtue of legal representation provided to Zarro and his entities.

> [T]he fundamental purpose of the UTPA [Unfair Trade Practices Act] is to protect the consumer[.] ... [Any deception committed by H & R] did not harm the consuming public.... Moreover, [H & R] was not competing with [Synergy], and it did not have any actual or poten-

tial business relationship with [Synergy]. The UTPA, therefore, cannot be used here because there is no competitive or business relationship that can be policed for the benefit of the consuming public.

*Food Lion*, 194 F.3d at 520.

Moreover, Synergy wired the funds to H & R before any point in time when APH was to have provided financing. The Plaintiffs' injury, if any, occurred after the agreement and the transmittal of the funds. That is, the Plaintiffs' injury was not proximately caused by wiring the legal fee to H & R but by the later conduct, or lack thereof, of Zarro and his entities. *Belcher v. Fleetwood Enterprises, Inc.*, 162 N.C.App. 80, 590 S.E.2d 15, 19 (2004); *Boyce & Isley, PLLC v. Cooper*, 153 N.C.App. 25, 36, 568 S.E.2d 893, 902 (2002) (**"To recover, a plaintiff must have suffered actual injury as a proximate result of the ... misrepresentation."**).

Next, Plaintiffs have alleged that the *Defendants* committed fraud by (1) having knowledge, prior to the time that Synergy and APH entered into agreements, that Zarro and his entities had neither the ability nor intention to obtain financing; (2) misrepresenting that Zarro and his entities had access to funds for financing; and (3) concealing this information from the Plaintiffs in order to induce them to enter into the contract. However, as to the specific allegations made against *H & R* only, Plaintiffs allege (1) H & R represented that funds from Zarro were in its possession for the project; (2) H & R knew Zarro's entities had neither the ability nor the intention of obtaining financing; (3) H & R knew that Zarro used these entities to procure money from Synergy with the intent of defrauding; (4) H & R knew that the entities would not honor the agreement; and (5) H & R knew that the money

wired to it should have been used for financing and not for a fee.

In North Carolina, "[t]he essential elements of the tort of fraud are as follows: (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that [thereby] resulted in damage to the injured party." As the first element indicates, the misrepresentation must ordinarily be of a past or existing fact. However, when a future representation is made with an intent to deceive the purchaser and at the time of making the misrepresentation, the defendant has no intention of performing his promise, fraud may be found.

*Volumetrics Med. Imaging v. ATL Ultrasound, Inc.,* 243 F.Supp.2d 386, 414 (M.D.N.C.2003) (quoting *Horack, supra,* at 150 N.C.App. 313, 563 S.E.2d at 53) (other internal quotations omitted).

■ The first allegation is that H & R misrepresented that it had in its possession funds which were to be used for financing. The last allegation is that H & R knew that the money wired to it should have been used as financing. Neither allegation is sufficiently specific to meet the rigorous standard applied to pleadings of fraud.

Allegations of fraud are subject to more exacting pleading requirements than are generally demanded by our liberal rules of notice pleading. Rule 9(b) of the North Carolina Rules of Civil Procedure provides in relevant part that: In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity.... "[I]n pleading actual fraud the particularity requirement is met by alleging time, place and.content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." This formula ensures that the requisite elements of fraud will be pleaded with the specificity required by Rule 9(b).

*Harrold v. Dowd,* 149 N.C.App. 777, 782, 561 S.E.2d 914, 918 (2002) (quoting *Terry v. Terry,* 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981)) (other internal quotations omitted). Here, the allegations "are merely bare assertions and fail to conform to Rule 9(b) particularity requirements." *Id.,* at 783, 561 S.E.2d at 918.

The remaining allegations suffer from the same defect. In addition to the fact that time, place, and content are not alleged, the allegations rely on future conduct or omissions of Zarro and his entities, not conduct of H & R. "A fraud claim based on a promise of a future act may succeed only where there is evidence of scienter tending to show that the promisor intended to deceive and had no intention of performing the promise at the time he made it." *Jenkins v. AKZO Noble Coatings, Inc.,* 35 Fed.Appx. 79, 86, 2002 WL 1020698 (4th Cir.2002) (citing *Johnson v. Phoenix Mut. Life Ins. Co.,* 300 N.C. 247, 266 S.E.2d 610 (1980)). While this might apply to Zarro, there is no allegation that H & R knew and intended at the time of the agreement, as to which it was not even a party, that it, instead of Zarro, would fail in the future to arrange financing for Synergy. *Id.* Moreover, nothing in the agreement required H & R to do anything other than receive the $100,000. *Id.*

To the extent that the complaint alleges that H & R knew that Zarro in the future would breach the contract, there is no allegation that Synergy reasonably relied

on such a representation. To the contrary, the allegation is that Synergy relied on representations that Zarro and APH would provide financing. And, the allegations do not allege time, place and content of the representation or the identity of the person making the representation. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C.App. 396, 403, 580 S.E.2d 1, 6 (2003). In fact, the complaint appears to have been intentionally drafted so that the conduct of Zarro could be attributed to H & R without any specific facts being alleged. The Court finds the complaint fails to properly state a claim of fraud against H & R.

Closely related to the claim of fraud are the federal and state claims of racketeering alleged in the eleventh and twelfth causes of action. Although not entirely clear, it appears the complaint alleges a violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, *et seq.*, based on § 1962(c) which provides in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]

18 U.S.C. § 1962(c). Section (d) of the same statute makes it illegal to conspire to violate section (c). The statute also provides a civil cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962[.]" 18 U.S.C. § 1964(c).

■ However, a "plaintiff bringing a civil RICO action under § 1964(c) must adequately plead at least two predicate acts of racketeering that form a 'pattern of racketeering.'" *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 233 (4th Cir.2004). Plaintiffs allege that the Defendants in general defrauded "plaintiffs and others in connection with the Walnut Cove development project and other golf course developments." Complaint, ¶ 88. However, the complaint does not specify the predicate acts, as identified in 18 U.S.C. § 1961, upon which the Plaintiffs rely. *Central Distrib. of Beer, Inc. v. Conn*, 5 F.3d 181, 183–84 (6th Cir.1993) **(In order to maintain a civil RICO action, a plaintiff must first demonstrate that the defendant had committed one of the crimes enumerated in 18 U.S.C. § 1961(1) and prove each prong of this predicate criminal offense.).**

> As in any other fraud case, the pleader [alleging predicate acts of fraud] is required "to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud."... It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.

*North Bridge Assoc., Inc. v. Boldt*, 274 F.3d 38, 43 (1st Cir.2001); *accord, Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997). The pleading deficiencies of the complaint are sufficient to warrant dismissal.

However, assuming *arguendo* that the Plaintiffs had adequately plead the predicate acts of fraud, they fare no better. The Plaintiffs "must show that the predicate acts are related *and* that they amount to or pose the threat of continued criminal activity (the 'continuity' requirement)." *Id.* The sole allegation of the complaint in this regard is that the Plaintiffs have "since learned that Zarro and his related entities have a history and course of conduct of failing to honor obligations related to proposed golf course developments and other ventures." Complaint, ¶ 21. Zarro, they allege, is currently under indictment

in New York "as a result of similar dealings involving a proposed golf course development in New York." *Id.* These allegations do nothing to educate the Court as to type of fraud allegedly perpetuated in New York, the time thereof, or any particulars related thereto. Indeed, the complaint does not even refer to this prior act as fraud.

> In order to demonstrate relatedness, the predicate acts must have the same or similar purposes, participants, victims, or methods, or otherwise be interrelated by distinguishing characteristics and not be isolated events. [Plaintiffs'] minimal assertions do not permit [the Court] to realistically assess the purposes, participants, or methods of the alleged acts to determine their relatedness.

*Ahmed, supra.*

 "After establishing that the defendant has committed one of the predicate offenses (*i.e.,* 'racketeering activities') on two or more occasions, the plaintiff must then demonstrate that the offenses amount to a 'pattern of racketeering activity.'" *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "Because the statutory definition of racketeering activity does not include common law fraud, such activity must be predicated on violations of the mail and wire fraud statutes." *ePlus Technology, Inc. v. Aboud,* 313 F.3d 166, 181 (4th Cir.2002). However, the Plaintiffs have not alleged at any point in the complaint that H & R or Zarro committed mail or wire fraud by a scheme disclosing an intent to defraud and the use of the mails or interstate wire communications in furtherance of that scheme. *Id.* (reciting the elements of mail and wire fraud); *accord, American Chiropractic, supra.* Not only have the Plaintiffs failed to allege two separate predicate acts, they have failed to sufficiently identify a single

predicate act. However, even if two such acts had been alleged, the complaint is still deficient.

> While a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern. To establish a pattern of racketeering activity, the plaintiff must show that the predicate acts are related and that they amount to or pose a threat of continued criminal activity.... Continuity refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. Closed-ended continuity may be established by a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. Open-ended continuity may be established where, for example, the related predicates themselves involve a distinct threat of long-term racketeering activity, or where the predicate acts are part of an ongoing entity's regular way of doing business ... or of conducting or participating in an ongoing and legitimate RICO enterprise. [The Fourth Circuit is] cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its services at least twice. RICO liability is reserved for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.

*GE Investment Private Placement Partners v. Parker,* 247 F.3d 543, 549 (4th Cir.2001) (internal quotations omitted). According to the complaint, the sole predicate act was Zarro's New York development, conduct for which he has been indicted. No allegations are contained in the complaint which establish either a

closed period of repeated conduct or an open-ended period of on-going conduct which poses a threat of repetition. *North Bridge, supra.* "Here, absent sufficient allegations of both predicate acts and relatedness, the 'amounted to' threshold has not been reached. Similarly, the 'threat' approach is unavailable; there is no allegation that, after the [current deal] such conduct was an ongoing entity's way of doing business." *Ahmed, supra; ePlus,* 313 F.3d at 182 ("Thus, it is clear that predicate acts of racketeering activity must be part of a prolonged criminal endeavor."). To the extent that this claim relies on an allegation of conspiracy, because the substantive RICO claim fails, the conspiracy claims fails as well. *Ochoa v. Housing Auth. of City of Los Angeles,* 47 Fed.Appx. 484, 2002 WL 31119855 (9th Cir.2002).

Plaintiffs also alleged a state law RICO claim, based on N.C. Gen.Stat. §§ 75D–1, *et seq.* The civil remedy provided by North Carolina law, however, defines a "pattern of racketeering activity" as requiring "that at least one act of racketeering activity be an act of racketeering activity *other than* (i) an act indictable under 18 U.S.C. § 1341 [mail fraud] or U.S.C. § 1343 [wire fraud], or (ii) an act which is an offense involving fraud in the sale of securities." N.C. Gen.Stat. § 75D–8(c). As previously noted, the complaint here fails to identify the nature of the predicate act. However, based on the content of the complaint, the only such acts which may be divined relate solely to mail or wire fraud. As a result, no cause of action is stated. *State of North Carolina ex rel. Long v. Cooper,* 14 F.Supp.2d 767, 771 (E.D.N.C.1996), *aff'd,* 151 F.3d 1030 (4th Cir.1998) ("North Carolina law does not permit acts of mail fraud to stand alone as the 'predicate act' allowing a scheme to be classified as a 'pattern of racketeering' in a private civil action.

Rather, North Carolina RICO requires that a private plaintiff allege the existence of at least one 'act of racketeering' other than mail fraud."). Moreover, there is no proof that the Plaintiffs complied with the statute by "concurrently notify[ing] the Attorney General in writing of the commencement of the action." N.C. Gen.Stat. § 75D–8(c).

In addition, for the same reasons stated in connection with the federal RICO statute, this cause of action fails. *Kaplan v. Prolife Action League of Greensboro,* 123 N.C.App. 720, 727–29, 475 S.E.2d 247, 252–54 (1996) (Analyzing the state RICO statute in accordance with federal court interpretations of the federal RICO statute, the Court held "it is apparent the General Assembly did not intend to provide NC RICO with a broader remedial stroke than its federal counterpart[.]").

Although H & R did not move to dismiss the cause of action based on breach of contract, Plaintiffs argued in their brief against any such dismissal. However, the complaint does not state a cause of action for breach of contract against H & R. In the Ninth Claim for Relief, the complaint clearly alleges that APH, Z–HeMa and "defendants *(other than Herzfeld & Rubin)*" breached the contract to provide funding. Complaint, ¶ 78 (emphasis added). No other mention of H & R is made and no allegation is included that it breached the contract. This is not surprising since H & R is not a party to any contract with the Plaintiffs. Therefore, in order to clarify the matter, the Court will dismiss any such claim which the Plaintiffs may assert against H & R.

Plaintiffs also alleged that H & R participated in a civil conspiracy with the other Defendants.

A claim for civil conspiracy consists of: (1) an agreement between two or more

persons; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) which agreement results in injury to the plaintiff. A threshold requirement in any cause of action for damages caused by acts committed pursuant to a conspiracy must be the showing that a conspiracy in fact existed. Although liability may be established by circumstantial evidence, the evidence of the agreement must be more than a suspicion or conjecture to justify submission of the issue to the jury.

*DiFrega*, 596 S.E.2d at 461. As with the cause of action for constructive fraud, the complaint is silent as to the manner in which H & R conspired with Zarro. Indeed, the allegations of conspiracy are based on nothing more than speculation.

■ Moreover, "in North Carolina, there is no independent cause of action for civil conspiracy; the claim can arise only where there is an underlying claim for unlawful conduct." *Byrd v. Hopson*, 265 F.Supp.2d 594, 599 (W.D.N.C.2003). Thus, because the Plaintiffs did not prevail in stating any cause of action, this claim does not survive.

Because the Court has dismissed all claims asserted against H & R, no claim for punitive damages may stand.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the motion to dismiss of Defendants Herzfeld & Rubin and Strauss are hereby **GRANTED** and all the Plaintiffs'. claims against those Defendants are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Answer filed by Defendant Zarro in a *pro se* capacity on behalf of the corporate Defendants APH and Z–HeMa is hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that the corporate Defendants may appear through licensed counsel on or before 15 days from entry of this Order. Failure to do so will result in the entry of default against those Defendants by the Clerk of Court without further Order of this Court.