BENJAMIN S. HORACK, JR., PLAINTIFF v. SOUTHERN REAL ESTATE COMPANY OF CHARLOTTE, INC., LOUIS L. ROSE, JR., AND STEPHEN M. PATTERSON, DEFENDANTS

No. COA01-79

(Filed 21 May 2002)

### 1. Brokers— wage and hour claim—commercial real estate broker—no evidence of employment after resignation

The trial court properly granted defendant Southern Real Estate Company's (SRE's) motion for directed verdict on a Wage and Hour Act claim arising from a dispute over the commission for a commercial real estate transaction completed after plaintiff-realtor left defendant's employment where there was a reasonable inference of an agreement concerning the transaction, but no evidence that plaintiff was an employee of defendant after he resigned.

### 2. Unfair Trade Practices— payment of commercial real estate commission—evidence of contract, not unfair practice

Defendants' motion for a directed verdict was properly granted on an unfair and deceptive trade practices claim which arose from a dispute over payment of a commercial real estate commission for a transaction which closed after plaintiff left defendant's employment. The actions of defendants, if true, amount to a breach of contract instead of an unfair or deceptive trade practice.

### 3. Quantum Meruit— commercial real estate commission— broker not procuring cause of sale

The trial court properly granted a directed verdict for defendant real estate agency on a quantum meruit claim arising from a commercial real estate commission for a transaction which closed after plaintiff left defendant's employ where plaintiff presented no evidence of anything other than an express contract and plaintiff's participation in the transaction did not amount to evidence that he was the procuring cause of the sale.

### 4. Brokers— commercial real estate brokers—dispute over commission—no representations reasonably relied upon

The trial court did not err by granting motions for directed verdicts on fraud claims against other commercial real estate brokers arising from a disputed commission for a transaction which

closed after plaintiff broker had left the agency. There were no misrepresentations by defendant Rose because plaintiff testified that he did not communicate with Rose between the parties' last meeting about plaintiff's pending deals and the time the transaction closed, and, if the other broker made any misrepresentations, plaintiff could not have reasonably relied upon them because plaintiff was a former manager and 22 year employee of the agency and this defendant was a new broker with no authority to determine commission payments.

Judge GREENE dissenting.

Appeal by plaintiff from orders entered that ultimately resulted in a judgment filed 19 September 2000 by Judge James E. Lanning in Mecklenburg County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Weaver, Bennett & Bland, P.A., by Michael D. Bland and Joseph T. Copeland, for plaintiff-appellant.*

*Moore & Van Allen, PLLC, by Gregory J. Murphy and Scott M. Tyler, for defendant-appellees.*

CAMPBELL, Judge.

Plaintiff appeals from orders entered in Mecklenburg County Superior Court by Judge James E. Lanning ("Judge Lanning") granting defendants' motions for directed verdict against plaintiff's claims: (I) under the North Carolina Wage and Hour Act; (II) under the North Carolina Unfair and Deceptive Trades Practices Act; (III) for *quantum meruit*; and (IV) for fraud against defendant Louis L. Rose, Jr. ("Rose") and defendant Stephen M. Patterson ("Patterson") individually. We affirm.

Plaintiff was employed by defendant Southern Real Estate Company of Charlotte, Inc. ("SRE") between 1973 and 1995 as a commercial real estate broker. From 1986 to 1991, plaintiff acted as sales manager of SRE. Patterson was also employed as a commercial real estate broker with SRE from 1995 to 1999. Rose was president of SRE during plaintiff's and Patterson's employment with the company.

In 1985, SRE instituted a company policy manual ("manual"). On 23 August 1990, a new page ("Page 8B") was added to this manual. Page 8B provided, in part, that:

HORACK v. SOUTHERN REAL ESTATE CO.

[150 N.C. App. 305 (2002)]

[T]he broker when leaving [SRE] will register with the Sales Manager the potential sales he feels that are active and where he should be a participant in the commission. This registration will be in writing and signed by both the leasing broker and Sales Manager. After they have agreed on those potential sales, this listing will be binding on both for 90 days from the date of the listing by both the leasing broker and the Sales Manager.

Plaintiff was aware of Page 8B and even referred to it in a memorandum he wrote while acting as SRE's sales manager. However, plaintiff did not believe Page 8B applied to him because he was never given a copy of it as part of his policy manual. (At trial, defendants presented a 13 February 1985 memorandum that stated each employee is "required to keep [his or her copy of the manual] updated as corrections, additions or deletions are distributed.")

On 3 November 1994, SRE obtained a commercial real estate listing from Dixie Yarn, Inc. ("Dixie"), which gave SRE the exclusive right to list and market Dixie's 144 acre tract ("the Dixie property") in Mount Holly, North Carolina for nine months. Rose assigned plaintiff to be the listing agent for the Dixie property. In June of 1995, Squires Enterprises, Inc. ("Squires") was brought forward as a potential buyer for the Dixie property by Patterson, the buyer's agent for Squires. Plaintiff and Patterson began working together to try to close the deal between Dixie and Squires.

The nine-month listing agreement between Dixie and SRE expired on 3 August 1995. Squires did not make an offer to purchase the Dixie property prior to the expiration of the listing. Therefore, plaintiff sought to obtain an extension of the listing from Dixie, but Dixie chose not to re-list the property until it had determined whether Squires was actually going to make the purchase.

On 30 August 1995, plaintiff submitted his letter of resignation from SRE to Rose. As required by Page 8B, this letter listed the Dixie/Squires transaction as one plaintiff expected to participate in after he left SRE. On 6 September 1995, plaintiff met with Rose and Patterson to discuss the pending deals he had been working on for SRE, including the Dixie/Squires transaction. There is a dispute as to what transpired at this meeting. According to plaintiff, he made a separate agreement with SRE whereby he would continue to represent Dixie in its negotiations with Squires after his resignation, but Patterson would represent Dixie as to any other potential buyers. Rose and Patterson denied that a separate agreement was made.

Nevertheless, all parties agreed that during the meeting plaintiff was never told that Page 8B's ninety-day rule did not apply to him.

After plaintiff resigned from SRE, Patterson obtained a written renewal of the Dixie listing on 12 September 1995; thus, making him both the listing agent and the buyer's agent in the Dixie/Squires transaction. The Dixie listing was again renewed by Patterson on 19 June 1996. Although plaintiff was no longer labeled as Dixie's listing agent, he continued to be copied on several documents about the transaction at least up until the conclusion of the ninety-day period following his resignation. When the contract of sale between Dixie and Squires was signed in March of 1996 (more than six months after plaintiff's resignation), Patterson honored plaintiff's request to send him a copy of the contract. Plaintiff had no contact with Rose between the date of his resignation and the signing of the contract of sale.

The Dixie/Squires transaction closed on 18 December 1996, more than fifteen months after plaintiff resigned from SRE. SRE's commission on the transaction was $160,606.98. Upon learning of the closing, plaintiff informed SRE that he was entitled to the twenty-five percent commission allocated to the listing agent. SRE informed plaintiff that Patterson had already received the listing agent's portion of the commission because his renewal of the Dixie listing had made him both the listing agent and the buyer's agent. SRE also stated that Page 8B's ninety-day rule barred plaintiff's entitlement to a commission. However, as a good faith gesture, Patterson offered plaintiff $10,000.00 from his share of the commission. Plaintiff refused this amount.

Thereafter, plaintiff filed a complaint against defendants asserting claims against defendant SRE under the Wage and Hour Act and for *quantum meruit*, and claims against all three defendants under the Unfair and Deceptive Trades Practices Act and for fraud. Plaintiff's complaint did not include a claim for breach of contract. At the close of plaintiff's evidence on 29 August 2000, the trial court granted directed verdict on plaintiff's Wage and Hour Act claim against SRE, his fraud claims against both Rose and Patterson, and plaintiff's Unfair and Deceptive Trade Practices Act claim against all three defendants. At the close of all the evidence, the court granted directed verdict on plaintiff's *quantum meruit* claim against SRE. Plaintiff's fraud claim against SRE was allowed to go to the jury. On 31 August 2000, the jury unanimously found that SRE was not liable

to plaintiff for fraud. The court's judgment reflecting the jury verdict was filed on 19 September 2000. Plaintiff appeals the orders granting defendants' motions for directed verdict.

Plaintiff argues the trial court erred in granting defendants' motions for directed verdict. We disagree.

"A motion for directed verdict tests the sufficiency of the evidence to take [a] case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). It is appropriately granted only when by looking at the evidence in the light most favorable to the non-movant, and giving the non-movant the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury. *Streeter v. Cotton*, 133 N.C. App. 80, 514 S.E.2d 539 (1999). A trial court's decision to grant or deny a motion for directed verdict should not be disturbed absent an abuse of discretion. *G.P. Publications, Inc. v. Quebecor Printing-St. Paul, Inc.*, 125 N.C. App. 424, 481 S.E.2d 674 (1997).

Plaintiff brings forth four assignments of error in the case *sub judice*. For the following reasons, we affirm the trial court's orders granting defendants' motions for directed verdict.

## I: Wage and Hour Act

[1] In plaintiff's first assignment of error, he argues the trial court erred in granting defendant SRE's motion for directed verdict on his Wage and Hour Act claim. We disagree.

The Wage and Hour Act was enacted to safeguard the hours worked by and the wages paid to "the people of the State without jeopardizing the competitive position of North Carolina business and industry." N.C. Gen. Stat. § 95-25.1(b) (2001). An employee or the Commissioner of Labor may bring suit against an employer for violations of this act. *Laborers' Int'l Union of North America, AFL-CIO v. Case Farms, Inc.*, 127 N.C. App. 312, 315, 488 S.E.2d 632, 634 (1997). Under the Wage and Hour Act, an "employee" is defined as "any individual employed by an employer." § 95-25.2(4). Additionally, in determining whether an individual is an "employee," our state considers factors such as: (1) the degree of control the alleged employer exerted over the person; and (2) the permanency of the relationship between the person and the alleged employer. *See Laborers'*, 127 N.C. App. at 314, 488 S.E.2d at 634; *Thomas v. Brock*, 617 F. Supp. 526, 534 (W.D.N.C. 1985), *aff'd in part, modified in part and remanded*, 810 F.2d 448 (4th Cir. 1987).

When looking at the evidence in the light most favorable to plaintiff, there is a reasonable inference that a separate agreement between the parties was made as a result of their 6 September meeting. However, there is no evidence to support plaintiff's contention that he was an employee of SRE after he resigned from the company. The separate agreement between plaintiff and SRE was entered into after plaintiff resigned. Following his resignation, plaintiff was to participate only in the Dixie/Squires transaction, providing services directly to Dixie and not SRE. This is further evinced by plaintiff having no contact with Rose during the fifteen-month negotiation period between Dixie and Squires. Plaintiff's limited and virtually non-existent relationship with Rose (and Dixie) during this period fails to prove SRE exerted control over any aspect of plaintiff's employment after 6 September 1995, especially considering plaintiff started his own real estate company following his resignation. Thus, the trial court properly granted defendant SRE's motion because plaintiff was not an "employee" of SRE. At most, plaintiff's role in the Dixie/Squires transaction was that of an independent contractor.

## II: Unfair and Deceptive Trades Practices Act

[2] In plaintiff's second assignment of error, he argues the trial court erred in granting defendants' motions for directed verdict on his Unfair and Deceptive Trades Practices Act claim. We disagree.

Chapter 75 of our statutes establishes an action for unfair or deceptive practices or acts in or affecting commerce. *See Strickland v. A & C Mobile Homes,* 70 N.C. App. 768, 321 S.E.2d 16 (1984); N.C. Gen. Stat. § 75-1.1 (2001). Our case law has held that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers . . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required." *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citations omitted).

It is also well recognized by our state that actions for unfair or deceptive trade practices are distinct from actions for breach of contract. *Lapierre v. Samco Development Corp.,* 103 N.C. App. 551, 559, 406 S.E.2d 646, 650 (1991). Thus, "[a] mere breach of contract does not constitute an unfair or deceptive trade practice." *Mosley v. Mosley Builders v. Landin Ltd.,* 97 N.C. App. 511, 518, 389 S.E.2d 576, 580 (1990) (citation omitted). "[A] plaintiff must show substantial aggravating circumstances attending the breach to recover under the

Act, which allows for treble damages." *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) (citation omitted). *See also Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992).

By inferring that there was a separate agreement between the parties in the case *sub judice*, the actions of defendants, if found to be true, amount to a breach of contract instead of an unfair or deceptive trade practice. Essentially, plaintiff attempted to establish an unfair or deceptive trade practice by offering evidence of a note in Patterson's file stating: "Also, per [Rose], low profile with Dixie and [Dixie's counsel] regarding [plaintiff]. [SRE] is the agent, any obligation is through us." However, this note and the other purported "aggravating circumstances" offered into evidence, none of which were substantial, lack the sufficiency needed to allow submission of an unfair or deceptive trade practice claim to a jury. The trial court may have found there was sufficient evidence to allow a claim for breach of contract to go to the jury, assuming plaintiff had made a breach of contract claim, but plaintiff failed to plead such a claim in his complaint. Therefore, defendants' motion for directed verdict was properly granted.

### III: *Quantum Meruit*

[3] In plaintiff's third assignment of error, he argues the trial court erred in granting defendant SRE's motion for directed verdict on his *quantum meruit* claim. We disagree.

In order to prevent unjust enrichment, a plaintiff may recover in *quantum meruit* on an implied contract theory for the reasonable value of services rendered to and accepted by a defendant. *See Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 647, 312 S.E.2d 215, 218 (1984). However, "[i]t is a well established principle that an express contract precludes an implied contract with reference to the same matter." *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962). Therefore, *quantum meruit* "is not an appropriate remedy when there is an actual agreement between the parties." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998).

In the instant case, plaintiff presented no evidence of anything other than that he and defendants had entered into an express contract with regard to the Dixie/Squires transaction. Although he pled no claim specifically alleging breach of this express contract, all of

his claims alluded to this contract, including his fraud claim which went to the jury based on alleged fraudulent breach of the express contract. Having presented evidence only of an express contract, plaintiff may not now successfully contend that the trial court erred in granting defendant SRE's motion for a directed verdict on the *quantum meruit* claim.

Even if we were to find that there was sufficient evidence to show that any express contract (assuming one in fact existed) was abandoned or relinquished, plaintiff still did not produce evidence which would enable him to go to the jury on *quantum meruit*. Plaintiff's work while employed at SRE is not to be confused with his being the procuring cause of the sale of the property. A real estate broker is entitled to a commission as the procuring cause if the sale of the property "is the direct and proximate result of his efforts or services[.]" *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 251, 162 S.E.2d 486, 491 (1968). Here, despite plaintiff's active role in the transaction during the three months prior to his resignation, plaintiff's participation did not amount to evidence that he was the procuring cause of the sale. The evidence clearly showed that plaintiff did not (1) obtain the Dixie listing, (2) bring Squires forward as a potential buyer, or (3) participate in the Dixie/Squires negotiations that took place throughout the entire year following his resignation from SRE. Even making the above assumptions and taking the evidence in a light most favorable to plaintiff, his "efforts" nevertheless fall short of being the procuring cause of the sale.

Accordingly, defendant SRE's motion for directed verdict on plaintiff's *quantum meruit* claim was properly granted.

IV: Fraud

[4] In plaintiff's fourth assignment of error, he argues the trial court erred in granting defendants' motions for directed verdict on his fraud claims against both Rose and Patterson. In particular, plaintiff argues that since Rose and Patterson were acting as agents of SRE, the trial court committed reversible error when it dismissed the fraud claims against them, but allowed the fraud claim against SRE to go to the jury. Defendants Rose and Patterson agree that it is logically impossible to allow only the SRE fraud claim to go to the jury. *See Baker v. Rushing*, 104 N.C. App. 240, 247, 409 S.E.2d 108, 112 (1991) (holding "[i]t is well settled in North Carolina that a person is personally liable for all torts committed by him, notwithstanding that he may have acted as an agent for another or as an officer for a corpo-

ration."). However, defendants argue the trial court's error was harmless because there is no evidence to support fraud claims against Rose and Patterson. We agree.

The essential elements of the tort of fraud are as follows:

(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that [thereby] resulted in damage to the injured party.

*Rosenthal v. Perkins*, 42 N.C. App. 449, 451-52, 257 S.E.2d 63, 65 (1979). Concealment of a material fact may also constitute a misrepresentation for the purposes of a fraud claim. *See Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494 (1974).

In the present case, there were obviously no misrepresentations made by Rose to plaintiff because plaintiff testified he did not communicate with Rose following their 6 September meeting until a month after the Dixie/Squires transaction closed. Additionally, if Patterson made any misrepresentations, plaintiff, a former manager and twenty-two year employee of SRE, could not have reasonably relied upon them because Patterson had no authority to determine commission payments as a new broker with SRE. Having failed to support this first element of fraud, plaintiff's fraud claims against Rose and Patterson were properly dismissed.

However, even if there had been any misrepresentation or concealment by Rose and Patterson, the evidence offered by plaintiff failed to establish that it was definite and specific. There was no evidence detailing the terms of plaintiff's commission on the Dixie/Squires transaction under the alleged separate agreement, especially those terms concerning the amount of that commission. At best, defendants Rose and Patterson promised that plaintiff would receive a commission; a promise that Patterson kept by offering plaintiff $10,000.00. Thus, there was no abuse of discretion by the trial court with respect to the fraud claims.

For the aforementioned reasons, we find that the trial court properly granted defendants' motions to dismiss plaintiff's claims.

Affirmed.

**HORACK v. SOUTHERN REAL ESTATE CO.**

[150 N.C. App. 305 (2002)]

Judge McCULLOUGH concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting in part.

As I believe the evidence, viewed in the light most favorable to plaintiff, establishes substantial evidence to support his *quantum meruit* claim, I dissent. I otherwise fully concur in the remainder of the majority opinion.

### Standard of Review

On appeal from a directed verdict, this Court must determine whether there is substantial evidence of each essential element of a plaintiff's claim. *Cobb v. Reitter*, 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). In deciding a defendant's motion for a directed verdict, the trial court must consider the evidence "in the light most favorable to the plaintiff, including evidence elicited from the defendant favorable to the plaintiff," *Environmental Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 305, 330 S.E.2d 627, 628 (1985), and resolve "all inconsistences, contradictions and conflicts for [the plaintiff], giving [the plaintiff] the benefit of all reasonable inferences drawn from the evidence," *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. review denied*, 327 N.C. 140, 394 S.E.2d 177 (1990).

### Elements

In order to prevent unjust enrichment, "[q]*uantum meruit* operates as an equitable remedy based upon a quasi contract or a contract implied in law, such that a party may recover for the reasonable value of materials and services rendered." *Data Gen. Corp. v. County of Durham*, 143 N.C. App. 97, 103, 545 S.E.2d 243, 248 (2001). To recover in *quantum meruit*, a plaintiff must show: "(1) services were rendered to [the] defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Shields*, 75 N.C. App. at 306, 330 S.E.2d at 628. In addition, there can be no recovery for *quantum meruit* if there is an express contract governing the same subject matter. *Barrett Kays & Assoc., P.A. v. Colonial Bldg. Co., Inc. of Raleigh*, 129 N.C. App. 525, 529, 500 S.E.2d 108, 111 (1998). When applying *quantum meruit* to real estate trans-

actions, a plaintiff is entitled to recover a commission if he procures a party who actually contracts to purchase the property. *See Sessler v. Marsh*, 144 N.C. App. 623, 629-30, 551 S.E.2d 160, 164, *disc. review denied*, 354 N.C. 365, 556 S.E.2d 577 (2001).

### Express Contract

Defendants allege plaintiff's *quantum meruit* claim is barred by the existence of an express contract.

I agree with the majority that if an express contract exists, *quantum meruit* is not appropriate. This proposition, however, is conditioned on the existence of an express contract. *See Barrett Kays*, 129 N.C. App. at 529, 500 S.E.2d at 111. Even assuming an express contract exists, it "may be abandoned or relinquished: (1) by agreement between the parties; (2) by conduct clearly indicating such purpose; [or] (3) by the substitution of a new contract inconsistent with the existing contract." *Bixler v. Britton*, 192 N.C. 199, 201, 134 S.E. 488, 489 (1926).

In this case, viewing all the evidence in the light most favorable to plaintiff on his *quantum meruit* claim, there is substantial evidence an express contract covering the Dixie/Squires transaction did not exist. While there is a conflict in the evidence as to the existence of an express contract, this conflict must be resolved in favor of plaintiff. Even if there were no substantial evidence that an express contract existed, there is substantial evidence that any contract that did exist either was abandoned or relinquished. The parties' conduct, including Rose and Patterson having already decided prior to the closing of the Dixie/Squires transaction that plaintiff would not be paid a 25% listing commission, leads to an inference that the contract was abandoned or relinquished by the parties' conduct. *See id.*

### Procuring Cause

Because I believe there is substantial evidence no express contract exists covering the Dixie/Squires transaction, I address whether there was substantial evidence plaintiff was the "procuring cause" of the transaction.

"The general rule is that a broker is entitled to a commission 'whenever he procures a party who actually contracts for the purchase of the property at a price acceptable to the owner.' " *Sessler*, 144 N.C. App. at 629-30, 551 S.E.2d at 164 (quoting *Realty Agency, Inc. v. Duckworth & Shelton, Inc.*, 274 N.C. 243, 250-51, 162 S.E.2d

486, 491 (1968)). A "broker is the procuring cause if the sale is the direct and proximate result of his efforts or services," *Duckworth*, 274 N.C. at 251, 162 S.E.2d at 491, and he sets " 'in motion a series of events which, *without break in their continuity*' lead to the procurement of a purchaser who is ready, willing and able to purchase the property," *Sessler*, 144 N.C. App. at 633, 551 S.E.2d at 166 (citation omitted). Thus, it is the broker's "procurement of 'a party who actually contracts for the purchase of the property,' which determines entitlement to a realtor's commission." *Collins v. Ogburn Realty Co., Inc.*, 49 N.C. App. 316, 320, 271 S.E.2d 512, 515 (1980) (citation omitted).

In this case, viewing the evidence in the light most favorable to plaintiff, there is substantial evidence plaintiff was the procuring cause of the Dixie/Squires transaction. Initially, plaintiff evaluated the property to determine if SRE's listing of the Dixie property would be a profitable transaction. In addition, plaintiff was primarily responsible for marketing the property and cooperating with potential buyers. In June 1995, plaintiff provided a marketing packet, which included various information about the property, to Patterson for him to forward to Squires. Plaintiff worked with Patterson to promote the property, showed the property to Squires, and even drove Squires' representatives and Patterson on his boat to view the Dixie property. Prior to plaintiff's resignation, he received a proposed contract on the Dixie property from Squires and Patterson. Even after plaintiff resigned from SRE, from September 1995-December 1995, he continued to communicate with Dixie and worked with the lawyers of both Squires and Dixie to obtain a formal contract on the Dixie property, assisting in negotiation of those details. The evidence shows the Dixie/Squires transaction was a direct result of plaintiff's efforts and services; specifically, through plaintiff's marketing and advertisement of the Dixie property, he set in motion a series of events which led to the procurement of Squires, a ready, willing, and able purchaser.

## Conclusion

Accordingly, as there is substantial evidence of each essential element of *quantum meruit*, specifically that there was no express contract and that plaintiff was the procuring cause of the Dixie/Squires transaction, plaintiff's *quantum meruit* claim should have been submitted to the jury.