Kornegay v. Aspen Asset Group, L.L.C., 2006 NCBC 12

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04 CVS 22242

TIMOTHY G. KORNEGAY                          )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     )
                                             )
ASPEN ASSET GROUP, LLC, C. STEVE             )            **ORDER**
CLARDY, MICHAEL CLARDY, CARLTON              )
S. CLARDY, JR., ROCKING B. FARMS, LLC,       )
BASIC ELECTRIC COMPANY, INC., and            )
EARTH PRODUCTS COMPANY, LLC,                 )
                                             )
            Defendants.                      )
_____    )

*Bishop, Capitano & Abner, P.A. by J. Daniel Bishop and Raizel Arnholt Kahn for Plaintiff Timothy G. Kornegay.*

*Smith, Currie & Hancock, L.L.P. by Steele B. Windle, III, and Catherine H. Thompson for Defendants Aspen Asset Group, LLC, C. Steve Clardy, Michael Clardy, Carlton S. Clardy, Jr., Rocking B. Farms, LLC, Basic Electric Company, Inc., and Earth Products Company, LLC.*

Diaz, Judge.

{1}   The Court heard this matter on 7 August 2006 on the Motion of Defendants Aspen Asset Group, LLC, C. Steve Clardy, Michael Clardy, Carlton S. Clardy, Jr. ("Chip Clardy"), Rocking B. Farms, LLC, Basic Electric Company, Inc., and Earth Products Company, LLC (collectively, the "Defendants")[1] for Summary Judgment as to all claims pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

{2}   For the reasons set forth below, and after considering the Court file, the written Motion, and counsels' memoranda and oral arguments, the Court will (a) **DENY** the Defendants' Motion for Summary Judgment as to Plaintiff's First Claim for Relief alleging violations of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1 to -25.25 (2006); (b) **DENY** the Defendants' Motion for Summary Judgment as to that portion of the Plaintiff's Second Claim for Relief alleging a breach of contract for unpaid bonuses of 20% of net profits on investments originated and implemented by the Plaintiff; (c) **GRANT** the Defendants' Motion for Summary Judgment as to that portion of the Plaintiff's Second Claim for Relief alleging a breach of contract for additional "fair compensation" for Plaintiff's work in implementing investments; (d) **DENY** Plaintiff's Motion for Partial Summary Judgment as to the Second Claim for

Relief alleging breach of contract; (e) **GRANT** the Individual Defendants' Motion for Summary Judgment as to Plaintiff's Third Claim for Relief alleging recovery in *quantum meruit*; (f) **DENY** the Clardy Entities' Motion for Summary Judgment as to Plaintiff's Third Claim for Relief alleging recovery in *quantum meruit*; (g) **DENY** the Motion for Summary Judgment of Defendants C. Steve Clardy and Aspen Asset Group, LLC, as to Plaintiff's Fourth Claim for Relief alleging fraud;[2] (h) and **GRANT** the remaining Defendants' Motion for Summary Judgment as to Plaintiff's fraud claim.

## I.

## PROCEDURAL BACKGROUND

{3}     Plaintiff Timothy Kornegay ("Kornegay") filed his Verified Complaint ("Complaint") on 14 December 2004 in Mecklenburg County Superior Court.  Defendants answered the Complaint on 14 January 2005.  The case was transferred to the North Carolina Business Court and assigned to me as an exceptional matter by order of the Chief Justice of the North Carolina Supreme Court dated 19 January 2006.

{4}     Defendants served their Motion for Summary Judgment and supporting brief on 30 March 2006. On 11 May 2006, Kornegay served his Memorandum in Opposition to Defendants' Motion for Summary Judgment.  On 22 May 2006, Defendants served their Reply Brief.  The Court heard the parties' oral arguments on 7 August 2006.  This Motion is now ripe for disposition.

## II.

## FACTUAL BACKGROUND

### A.

### THE PARTIES

{5}     Kornegay is a citizen and resident of Mecklenburg County, North Carolina.  (Compl. ¶ 1.)

{6}     The Individual Defendants are all citizens and residents of Mecklenburg County, North Carolina. (Compl. ¶¶ 6-8.)

{7}     Defendants Aspen Asset Group, LLC ("Aspen"), Rocking B. Farms, LLC ("Rocking B. Farms"), and Earth Products Company, LLC ("Earth Products") are limited liability companies organized under the laws of the State of North Carolina with their principal places of business in Mecklenburg County, North Carolina.  (Compl. ¶¶ 2-3.)

{8}     Defendant Basic Electric Company, Inc. ("Basic Electric") is a North Carolina corporation with its principal place of business in Union County, North Carolina.  (Compl. ¶ 4.)

{9}     Aspen is an investment holding company formed for the purpose of managing real estate

investments.  (Steve Clardy Aff. ¶ 2.)

{10}   Basic Electric is an electrical contractor.  (Steve Clardy Aff. ¶ 2.)

{11}   Rocking B. Farms is a cattle and timber farm.  (Steve Clardy Aff. ¶ 2.)

{12}   Earth Products is in the business of dirt recycling.  (Steve Clardy Aff. ¶ 2.)

{13}   At all relevant times, Defendant Steve Clardy served as Aspen's Chief Executive Officer.
(Wilkinson Dep. 25:1-9.)

{14}   At all relevant times, Defendants Michael Clardy and Chip Clardy held ownership interests in or
actively managed one or more of the Clardy Entities.  (Answer ¶¶ 6-8; Wilkinson Dep. 88:4-90:17.)

**B.**

**SUMMARY OF THE FACTS**

{15}   In addressing the competing motions for summary judgment, the Court has accepted the non-
moving parties' version of the facts, where supported in the record.

{16}   Kornegay was hired to work for Aspen on or about 1 October 1996.  (Kornegay Aff. ¶ 4.)

{17}   Kornegay accepted employment with Aspen based on Defendant Steve Clardy's promise that he
would be paid $72,000 per year[3] plus: (1) an annual bonus in the amount of 20% of net profits on real
estate investments that he originated and implemented; and (2) "fair compensation" for any real estate
investments that he implemented, but did not originate.  (Kornegay Aff. ¶ 5; Kornegay Dep. 21:8-28:16,
101.)[4]

{18}   Defendant Steve Clardy told Kornegay that he was being hired to (in part) "initiate" or "find"
investments, but neither he nor Kornegay discussed specifically how the proposed bonus program would
operate or how Kornegay's bonus would be calculated.  (Kornegay Dep. 20:1-22:5, 57:4-58:3; Steve
Clardy Aff. ¶ 4-5.)

{19}   To qualify as the "originator" or "initiator" of a real estate investment for purposes of earning a
bonus, Kornegay understood that he was required to engage in "a combination of finding [the property],
doing due diligence, preparing for closing, answering questions, [and] doing a financial analysis."
(Kornegay Dep. 60:12-15.)

{20}   Although Kornegay was vague and inconsistent on the point in his deposition testimony, it appears
that he understood "implementation" of a real estate investment to mean the management and oversight of
the property post-closing.  (Kornegay Dep. 65:14-25, 66:17-19, 67:10-13.)  With respect to his right to
receive "fair" bonus compensation for implementing an investment that he did not originate, Kornegay
conceded that the specifics for determining such compensation were left open for future negotiations.

(Kornegay Dep. 101:12-20.)[5]

{21}    Kornegay and Steve Clardy also agreed that the term "net profits," for purposes of the 20% bonus calculation, meant revenues minus costs, but they did not discuss or otherwise identify the precise costs to be allocated against gross revenues.  (Kornegay Dep. 57:20-58:3.)  As for the revenue side of the equation, Kornegay and Clardy "never talked about 20 percent of the purchase prices [of the properties]. We talked about 20 percent of profits.  Profits would be sales – sales price of the resale minus the original price minus the cost."  (Kornegay Dep.  210:11-14.)[6]

{22}    Following his termination, Kornegay affirmed his understanding of this measure of net profits when he wrote the individual Defendants seeking payment of his outstanding bonuses and emphasizing that "[o]ur profit sharing was to be calculated on gross sales, minus job expenses."  (Kornegay Dep. Ex. 12.)

{23}    Although Kornegay now believes he is entitled to a 20% net profit bonus on properties he originated, even if they were not sold during his employment, he admits that the Defendants never made any such promise.  (Kornegay Dep. 82:4-20.)

{24}    Kornegay also believed that he could earn a 20% bonus for originating a particular real estate investment property, even if he did not find the property, provided that he completed a substantial portion of the work leading to its acquisition.  (Kornegay Dep. 60:21-63:12.)

{25}    Before Kornegay began his employment, Steve Clardy directed him to work with Evelyn Wilkinson, Aspen's Chief Operating Officer, to memorialize his employment terms in writing.  (Kornegay Dep. 34:22-35:17, 108:19-110:8.)

{26}    Sometime between October and November 1996, Kornegay received a draft of the proposed terms from Ms. Wilkinson, which he deemed unsatisfactory.  (Kornegay Dep. Ex. 1; Kornegay Dep. 137:12, 139:18.)  This draft (which Kornegay quotes almost verbatim in his Memorandum in Opposition to the Defendants' Motion for Summary Judgment) provides, *inter alia,* that the Defendants will contribute 20% of net profits on real estate and other investments originated and implemented by Kornegay and that "special arrangements" will be made with regard to his work on other projects.[7]

{27}    Over the next six years, Kornegay and his employer exchanged numerous drafts of the proposed employment agreement, but none was ever signed.  (Kornegay Dep. 154:10, 166:16-22; Kornegay Dep. Exs. 1-12.)

{28}    Kornegay performed services for each of the various Clardy Entities.  (Kornegay Dep. 110:12-20; Kornegay Aff. ¶¶ 4, 14.)

{29}   Each of the Individual Defendants exercised some measure of control over the terms and conditions of Kornegay's employment.  (Answer ¶ 23.)

{30}   For example, Defendant Michael Clardy supervised Kornegay's daily work activities.  (Kornegay Aff. ¶ 14.)  Michael Clardy also told Kornegay in June 2002 that he would not be receiving bonus compensation, (Wilkinson Dep. 164:9-165:21), and he fired Kornegay.  (Kornegay Dep. 280:12-18.)

{31}   Defendant Chip Clardy assigned tasks to Kornegay on a regular basis.  (Kornegay Aff. ¶ 14.)  At a post-termination meeting with the Individual Defendants where Kornegay demanded his bonus payments, Chip Clardy (who apparently is an attorney) told Kornegay that his alleged employment agreement was not binding.  (Kornegay Dep. 281:6-282:4.)

{32}   From 1996 through his termination on 16 July 2004, Kornegay was paid $72,000 annually.  He received no additional compensation.  (Kornegay Dep. 33:11-15, 120:7-9.)

{33}   Kornegay alleges that his efforts in originating and implementing a number of properties generated approximately $9.375 million in realized and unrealized profits for the Defendants.  (Kornegay Dep. 288:14-289:3.)

{34}   Kornegay seeks 20% of the net profits for at least three properties that he claims to have originated and implemented, and that were sold during his term of employment.  (Kornegay Dep. 101:21-102:4, 288:14-289:3; Michael Clardy Aff. ¶ 8.)

{35}   Kornegay also seeks 20% of the net profits on nine other properties that he claims to have originated and implemented, but which were not sold during his tenure.[8]  (Kornegay Dep. 101:21-103:11.)

{36}   Finally, Kornegay seeks "fair compensation" (over and above his $72,000 annual salary) for his alleged efforts implementing or managing 10 other properties during his employment.  (Kornegay Dep. 102:13-106:22.)

## III.

## CONCLUSIONS OF LAW

### A.

### SUMMARY JUDGMENT STANDARD

{37}   Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."  N.C.G.S. § 1A-1, Rule 56(c) (2006).  The moving party bears the burden of showing a lack of triable issues of fact.  *Pembee Mfg. Corp.*

*v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). Once the moving party meets this burden, the nonmoving party must "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989).

{38} Summary judgment, however, is a drastic remedy that should be granted cautiously. Where the slightest doubt exists as to the merits of the motion, it should be denied. *First Fed. Sav. & Loan Ass'n v. Branch Banking & Trust Co.,* 282 N.C. 44, 50, 191 S.E.2d 683, 688 (1972); *Volkman v. DP Assocs.,* 48 N.C. App. 155, 157, 268 S.E.2d 265, 267 (1980).

{39} With this legal standard in mind, the Court proceeds to analyze the individual claims.

## B.

## BREACH OF CONTRACT

## 1.

## LEGAL PRINCIPLES

{40} A "contract is an agreement, upon sufficient consideration, to do or not to do a particular thing." *Overall Co. v. Holmes*, 186 N.C. 428, 431, 119 S.E. 817, 818 (1923). An essential element to every contract is mutuality of agreement. *D.M. Wright Builders, Inc. v. Bridgers*, 2 N.C. App. 662, 667, 163 S.E.2d 642, 645 (1968). Mutuality of agreement means that a contract's "legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree." *Overall*, 186 N.C. at 431-32, 119 S.E. at 818-19 (quoting *Prince v. McRae*, 84 N.C. 674 (1881)).

{41} An agreement to make a contract, or as the cases sometimes phrase it, "an agreement to agree," does not constitute a binding obligation. *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 657, 267 S.E.2d 584, 586 (1980). For a contract to bind two parties, they must assent to the same thing in the same sense, and their minds must meet at least with respect to <u>all</u> material terms. Thus, a contract which leaves material terms open for future negotiations is invalid. *Id.; Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974). Put another way, "[i]f any portion of the proposed terms is not settled, there is no agreement." *Goeckel v. Stokely*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952).

{42} On the other hand, "the law . . . does not favor the destruction of contracts on account of uncertainty, and 'the courts will, if possible, so construe the contract as to carry into effect the reasonable intent of the parties, if it can be ascertained.'" *Welsh v. Northern Telecom*, 85 N.C. App. 281, 290, 354 S.E.2d 746, 751 (1987) (quoting *Fisher v. John L. Roper Lumber Co.*, 183 N.C. 486, 490, 111 S.E. 857,

860 (1922)). Wherever possible, "courts should attempt to determine the intent of the parties from the language used, construed with reference to the circumstances surrounding the making of the contract." *Id.* (citing *Chew v. Leonard*, 228 N.C. 181, 44 S.E.2d 869 (1947)).

{43} Finally, even if a particular promise in an agreement is unenforceable because there was no meeting of the minds between the parties, the court must still determine whether it may sever the invalid provision and enforce the remainder. In that regard:

> A contract is entire, and not severable, when by its terms, nature and purpose it contemplates and intends that each and all of its parts, material provisions, and the consideration, are common each to the other and interdependent. Such a contract possesses essential oneness in all material respects. . . . On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other, nor is it intended by the parties that they shall be. . . . If it appear that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable.

*Wooten v. Walters,* 110 N.C. 251, 254-56, 14 S.E. 734, 735-36 (1892).

## 2.

## ANALYSIS

{44} Applying these legal principles here, neither side is entitled to summary judgment on Kornegay's claim for a bonus of 20% of net profits on investments that he originated and implemented. Defendants are entitled, however, to partial summary judgment as to their purported promise to pay Kornegay additional "fair compensation" for his work in implementing investment projects that he did not originate.

{45} With respect to the disputed claim of a 20% "net profits" bonus, Defendants insist that such a promise is unenforceable as a matter of law where, as here, the parties fail to agree on the activities that would qualify for a bonus or on a formula for calculating the same. (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs' Mem.") 17-19.) Kornegay responds that courts routinely allow such cases to go to a jury, even in the absence of a precise formula for calculating the amount of the bonus. (Pl.'s Mem. 6-10.)

{46} In fact, North Carolina courts have found such a promise sufficient to overcome a motion for directed verdict where the parties, "<u>by both their words and actions</u>," conveyed that they had reached a "meeting of the minds" with respect to the additional compensation. *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 523, 613 S.E.2d 274, 278 (2005) (emphasis added) (holding that a directed verdict was properly denied as to the existence of a contract based on an employer's promise to pay a bonus of 20% of all net income that the employee earned for the employer where the employee offered evidence that the employer paid the bonus in previous years); *see also Fulk v. Piedmont Music Ctr.*, 138 N.C. App. 425,

430, 531 S.E.2d 476, 480 (2000). In this case, however, Defendants never paid Kornegay a bonus, so *Arndt* and *Fulk* do not foreclose summary judgment.

{47}    By the same token, however, the *Arndt* and *Fulk* holdings do not go as far as the Defendants urge. Merely because the Court of Appeals determined in those cases that the words and actions of the promisors were sufficient to raise issues of fact does not mean that such evidence is essential to send the case to the jury. I have not found (and the Defendants have not cited) any North Carolina authority affirming summary judgment for an employer on facts analogous to those before me, but Kornegay has cited persuasive authorities suggesting that summary judgment is not appropriate on these facts. *See Wood v. James B. Nutter & Co.,* 416 S.W.2d 635 (Mo. 1967) (reversing summary judgment in favor of an employer based on an alleged oral agreement to pay the employee a salary plus one-third of the net profit derived from the employer's servicing operation where there was no evidence of prior bonus payments by the employer); *see also Pratt v. Seventy-One Hawthorne Place Assocs.,* 106 S.W.3d 608 (Mo. Ct. App. 2003).

{48}    In sum, while the Defendants' arguments have some logical appeal (particularly in light of Kornegay's remarkable inability to fix on a consistent and stationary definition of the contours of the alleged 20% net profits bonus plan in his deposition testimony), Kornegay has shown that there remain genuine issues for trial as to whether the parties reached "a meeting of the minds" and, if so, the precise terms of their contract. *See Northington v. Michelotti,* 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995) (stating that whether mutual assent has been established and whether a contract was intended between the parties are questions for the trier of fact).

{49}    Kornegay also alleges that the employment agreement required Defendants to provide additional bonus compensation for his work implementing real estate investments that he did not originate. As to this purported term, however, the parties did not specify with any degree of reasonable certainty how such compensation would be calculated.

{50}    Kornegay asserts that his agreement with the Defendants as to investments implemented, but not originated, by him was that he would receive "fair compensation." (Kornegay Aff. ¶ 5.)   The various draft employment agreements described this promise as a commitment to make "special arrangements" for additional compensation. For purposes of this summary judgment motion, there is no material difference between these terms.

{51}    The bottom line is that the parties never agreed during their initial negotiations on how they would determine this additional compensation, opting instead to defer that issue for another day. (Kornegay Dep. 101:12-20.) For six years thereafter, the parties traded various draft agreements in an unsuccessful

attempt to memorialize their entire oral bargain. When Kornegay was terminated on 16 July 2004, he departed without being paid any bonus.

{52} On these facts, Kornegay may not proceed with this portion of his claim for breach of contract:

> Generally, a contract, or offer to contract, which leaves material portions open for future agreement is nugatory and void for indefiniteness. The reason is that if a preliminary contract fails to specify all of its material and essential terms so that some are left open for future negotiations, then there is no way by which a court can determine the resulting terms of such future negotiations. Hence, there is no basis upon which to ascertain what damages, if any, might follow from a refusal to enter into such future agreement.

*North Carolina Nat'l Bank v. Wallens,* 26 N.C. App. 580, 583, 217 S.E.2d 12, 15 (1975).

{53} The parties in this case left open for future negotiations the question of "fair compensation" for Kornegay's work not otherwise covered by the 20% net profits bonus. Simply put, there was no meeting of the minds between these parties as to this essential term of the employment agreement. *See, e.g., Varney v. Ditmars,* 111 N.E. 822 (N.Y. 1916) (holding that a contract calling for an employee to receive "a fair share of the profits" is too vague, indefinite, and uncertain to be enforced); *Edwards v. Central Georgia HHS, Inc.,* 253 Ga. App. 304, 558 S.E.2d 815 (2002) (declining to enforce a contract for a purported bonus payment because it was not for an exact amount or based upon a formula or method for determining the exact amount of the bonus); *T'ai Corp. v. Kalso Systemet, Inc.* 568 F.2d 145, 147 (10th Cir. 1977) (holding that an attempt to fix a quantity in a sales contract by such terms as "fair share" is too indefinite). As a result, the purported agreement is unenforceable. *See Gray v. Hager*, 69 N.C. App. 331, 335, 317 S.E.2d 59, 62 (1984) (stating that a contract is unenforceable if its material terms are indefinite).

{54} Finally, applying the principles with respect to divisibility of contracts set forth in *Wooten*, there also exists a genuine issue of material fact as to whether the parties intended the two alleged promises regarding bonus payments to be part of a single indivisible contract (in which case the whole contract stands or falls together) or severable. *See generally McLawhon v. Briley*, 234 N.C. 394, 396, 67 S.E.2d 285, 287 (1951); *see also Mioni v. Hewes,* 763 P.2d 414, 416 (Or. Ct. App. 1988) (stating that whether promises are severable from each other, "thereby making the contract divisible, depends on the intentions of the parties as reflected in the words that they used").

{55} Accordingly, the Court will **DENY** Defendants' Motion for Summary Judgment as to that portion of the breach of contract claim arising from the alleged promise of a 20% net profits bonus but will **GRANT** Defendants' Motion for Summary Judgment as to that portion of the breach of contract claim arising from the alleged promise of additional "fair compensation." The Court also **DENIES** Plaintiff's

Motion for Partial Summary Judgment as to the breach of contract claim.

## C.

## NORTH CAROLINA WAGE & HOUR ACT VIOLATIONS

## 1.

## LEGAL PRINCIPLES

{56}    "The Wage and Hour Act was enacted to safeguard the hours worked by and the wages paid to 'the people of the State without jeopardizing the competitive position of North Carolina business and industry.'" *Horack v. S. Real Estate Co. of Charlotte,* 150 N.C. App. 305, 309, 563 S.E.2d 47, 521 (2002) (citing N.C. Gen. Stat. § 95-25.1(b) (2001)).  An employee may sue under the Act to recover wages due and owing pursuant to the terms of the employment.  N.C.G.S. § 95-25.6.

{57}    A "'wage' paid to an employee means compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation . . . and . . . includes [among other things] bonuses, when the employer has a policy or a practice of making such payments."  N.C.G.S. § 95-25.2(16).

{58}    The Act defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  N.C.G.S. § 95-25.2(4).  Because this is the same definition of "employer" as that found in the Fair Labor Standards Act ("FLSA"), 29 U.S.C.S § 203(d) (2006), the North Carolina Department of Labor "looks to the judicial and administrative interpretation and rulings established under federal law as a guide for interpreting the North Carolina law."  *In re Halperin,* 87 B.R. 399, 400 (Bankr. W.D.N.C. 1987).  This Court will do the same.

{59}    The federal cases interpreting the FLSA hold individuals jointly and severally liable with a corporate employer for unpaid wages where they serve as part owners, officers, or directors of the corporation, or where they are involved in the management of the corporation.  *Id.* (citing *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir. 1983)); *Wirtz v. Soft Drinks of Shreveport, Inc.*, 336 F. Supp. 950 (W.D. La. 1971); *Donovan v. Grim Hotel*, 747 F.2d 966 (5th Cir. 1984).  *Halperin* teaches that the question of liability boils down to whether "the individual asserted sufficient 'control' to justify liability for wages." 87 B.R. at 400; s*ee also Horack,* 150 N.C. App. at 309, 563 S.E.2d at 51 (stating that a relevant factor is "the degree of control the alleged employer exerted over the person").

{60}    An employer who violates the Wage and Hour Act is liable for the unpaid wages with interest from the date each amount first comes due.  N.C.G.S. § 95-25.22(a).  In addition, the trial court must double any such judgment as a form of liquidated damages unless the employer proves that it acted in good faith and that it had reasonable grounds for withholding payment, in which case, the Court may

decline to award liquidated damages or award a lesser sum. N.C.G.S. § 95-25.22(a1). The Court may also order the employer to pay costs and a reasonable attorneys' fee. N.C.G.S. § 95-25.22(d).

## 2.

## ANALYSIS

{61} Because there exists a genuine issue of material fact as to a portion of Kornegay's claim for bonus compensation and there is no dispute that Defendants have not paid Kornegay the full amount of the bonus claimed in this action, the Court will **DENY** Defendants' Motion for Summary Judgment on Kornegay's claim alleging a violation of the Wage & Hour Act.

{62} Defendants also argue that any alleged employment agreement was negotiated by Steve Clardy acting solely on behalf of Aspen. As a result, the remaining Defendants insist that they were not Kornegay's employer and, therefore, are not liable to him for any Wage and Hour Act violation. Because, however, there is evidence tending to show that: (a) Kornegay provided services to all of the Clardy Entities; (b) the Individual Defendants were all involved (at least to some degree) in the management of one or more of the Clardy Entities; and (c) the Individual Defendants all exercised some measure of control over Kornegay's work activities and the decision to deny Kornegay his alleged bonus, the Court will **DENY** the Motion of Defendants Chip Clardy, Mike Clardy, Basic Electric, Rocking B. Farms, and Earth Products for Summary Judgment as to the North Carolina Wage & Hour Act claim.[9]

## D.

## QUANTUM MERUIT

## 1.

## LEGAL PRINCIPLES

{63} "*Quantum meruit* is an equitable principle that allows recovery for services based upon an implied contract. The law implies a promise to pay for services . . . where the recipient knowingly and voluntarily accepts the services and there is no showing that the services were gratuitously given." *Harrell v. Constr. Co.*, 41 N.C. App. 593, 595, 255 S.E.2d 280, 281 (1979) (citing *Johnson v. Sanders*, 260 N.C. 291, 132 S.E.2d 582 (1963)).

{64} Where there is no agreement as to the amount of compensation to be paid for services, the person performing them is entitled to recover what they are reasonably worth, based on the nature of the work, time, and labor expended; skill, knowledge, and experience involved; the customary rate of pay for such work in the community at the time the work was performed; and other attendant circumstances. *Turner v.*

*Marsh Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940); *Envtl. Landscape Design Specialist v. Shields*, 75 N.C. App. 304, 307, 330 S.E.2d 627, 629 (1985).

{65}    *Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent <u>unjust</u> enrichment. *Potter v. Homestead Preservation Ass'n*, 330 N.C. 569, 578, 412 S.E.2d 1, 7 (1992).  The cases describe "unjust enrichment" as "the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Ivey v. Williams*, 74 N.C. App. 532, 534, 328 S.E.2d 837, 839 (1985).

{66}    Furthermore, "the mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play.  There must be some added ingredients to invoke the unjust enrichment doctrine." *Watson Elec. Constr. Co. v. Summit Cos., LLC,* 160 N.C. App. 647, 652, 587 S.E.2d 87, 92 (2003) (quoting *Peace River Elec. Coop., Inc. v. Ward Transformer Co., Inc.,* 116 N.C. App. 493, 509, 449 S.E.2d 202, 213 (1994)).

## 2.

## ANALYSIS

{67}    Defendants urge that summary judgment is appropriate on Kornegay's *quantum meruit* claim because Kornegay received a substantial salary for his services and, thus, the Defendants were not unjustly enriched.  As to the alleged bonus claim, Defendants argue that Kornegay, at best, originated only "12 properties for purchase and only three of those properties were ever sold and generated any revenue for Defendants." (Defs.' Mem. 25.)  Kornegay's evidence, however, is that he generated over $9 million dollars in profits (both realized and unrealized) during his employment and that his incentive for doing so was the expectation of receiving additional compensation for his efforts.  (Kornegay Dep. 288:14-289:3; Kornegay Dep. Ex. 12.)

{68}    These disputed facts create a triable issue as to whether the Defendants were unjustly enriched by Kornegay's services.  Accordingly, the Court will **DENY** the Defendants' Motion for Summary Judgment as to Kornegay's Third Claim For Relief in *Quantum Meruit.*  However, in the absence of any claim that the Clardy Entities are sham companies such that the Individual Defendants should bear personal liability for Kornegay's equitable claim,[10] the Court **GRANTS** summary judgment in favor of the Individual Defendants as to this claim.

## E.

## FRAUD

**1.**

**LEGAL PRINCIPLES**

{69}    "The essential elements of fraud are: '(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.'" *Rowan County Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (quoting *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981)).

{70}    "As a general rule, a mere promissory misrepresentation will not support an action for fraud." *Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985).  Put another way, "fraud cannot [ordinarily] be based on an allegation of a promise of future intent." *Id.*  Nevertheless, a plaintiff may recover for fraud where a promise of future intent is made with a present intention not to perform. *See Cofield v. Griffin*, 238 N.C. 377, 381, 78 S.E.2d 131, 134 (1953).

**2.**

**ANALYSIS**

{71}    In this case, Kornegay alleges that the Defendants defrauded him when they promised him bonus compensation because they never intended to keep that promise.  To support his claim of fraud, Kornegay points to (a) his performance in reliance on the promise; (b) the Defendants' failure to establish specific bonus criteria over the course of his employment; (c) the Defendants' failure to pay him a bonus; and (d) his subsequent discharge.  (Pl.'s Mem. 16-17.)

{72}    Defendants deny the allegations and point to evidence tending to show the absence of any fraudulent intent.  In particular, the Defendants point to the extended negotiations by both sides to reach agreement on the specifics of a bonus compensation plan and Kornegay's failure to demonstrate reliance "in light of his willingness to continue working for eight years without a written bonus plan." (Defs.' Mem. 27.)

{73}    Our Supreme Court has emphasized that "[a]llegations of fraud do not readily lend themselves to resolution by way of summary judgment because a cause of action based on fraud usually requires the determination of a litigant's state of mind." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 260, 266 S.E.2d 610, 619 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 569, 374 S.E.2d 385, 392 (1988).

{74}    In this case, the record contains sworn allegations of fraud juxtaposed against sworn denials.  Resolving this inconsistency would require me to draw a factual inference in favor of the Defendants, an action this Court may not take on a motion for summary judgment.  Accordingly, the Court will **DENY** the Defendants' Motion for Summary Judgment as to Kornegay's fraud claim as it applies to Defendant

Steve Clardy acting on behalf of Aspen.

{75}    However, because Kornegay has failed to present evidence sufficient to support claims of fraud against any other Defendant (and did not argue the point in his opposition papers), the Court will **GRANT** the motion for summary judgment as to Defendants Michael Clardy, Chip Clardy, Rocking B. Farms, Basic Electric, and Earth Products.

## CONCLUSION

{76}    Based upon the foregoing, the Court will:

(1)    **DENY** the Defendants' Motion for Summary Judgment as to Kornegay's First Claim for Relief alleging violations of the North Carolina Wage and Hour Act;

(2)    **DENY** the Defendants' Motion for Summary Judgment as to that portion of Kornegay's Second Claim for Relief alleging a breach of contract for unpaid bonuses of 20% of net profits on investments that Kornegay originated and implemented;

(3)    **GRANT** the Defendants' Motion for Summary Judgment as to that portion of Kornegay's Second Claim for Relief alleging a breach of contract for additional "fair compensation" for Kornegay's work in implementing investments;

(4)    **DENY** Kornegay's Motion for Partial Summary Judgment as to the Second Claim for Relief alleging breach of contract;

(5)    **GRANT** the Individual Defendants' Motion for Summary Judgment as to Kornegay's Third Claim for Relief alleging recovery in *quantum meruit*;

(6)    **DENY** the Clardy Entities' Motion for Summary Judgment as to Kornegay's Third Claim for Relief alleging recovery in *quantum meruit*;

(7)    **DENY** the Motion for Summary Judgment of Defendants C. Steve Clardy and Aspen as to Kornegay's Fourth Claim for Relief alleging fraud; and,

(8)    **GRANT** the remaining Defendants' Motion for Summary Judgment as to the claim for fraud.


This the _____ day of September, 2006.

_____

[1]    The Court's Order will sometimes refer to Defendants C. Steve Clardy, Michael Clardy, and Chip Clardy, collectively as the "Individual Defendants."  The Court's Order will also refer to Defendants Aspen Asset Group, LLC, Rocking B. Farms, LLC, Basic Electric Company, Inc., and Earth Products Company, LLC collectively as the "Clardy Entities."

[2]    This claim is incorrectly denominated in the Plaintiff's Verified Complaint as the "Third" Claim for Relief.

[3] According to Kornegay, the $72,000 sum consisted of a $50,000 base salary, with the balance being a draw against his expected bonus. (Kornegay Dep. 22:23-27:6.) Kornegay further alleged that he would not forfeit the $22,000 draw, regardless of whether he earned a bonus in any particular year. (Kornegay Dep. 22:23-27:6.)

[4] Although not in dispute here, Kornegay was also promised the opportunity to participate as an equity partner in any real estate investments. (Kornegay Dep. 28:10-16, 159:16-24.)

[5] Kornegay also testified that "fair compensation" could be calculated using either an hourly rate or by reference to a percentage of the profits, depending on the work that he performed. (Kornegay Dep. 230:19-231:2, 244:21-245:2, 246:8-23.)

[6] In his deposition testimony, however, Kornegay insisted that his net profits bonus should also include a 20% cut of any annual profits generated by rents or other income producing activities. (Kornegay Dep. 265:17-266:6.)

[7] Kornegay asserts that this was not the first draft of the agreement exchanged by the parties. (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 3 n.2.) I find that any factual dispute as to the precise sequence of the various draft agreements contained in this record is not material to the issues before me.

[8] As to this element of his damages, Kornegay alleges that he should recover 20% of the appraised value of the unsold property at the time of his termination, less some unspecified cost estimate. (Kornegay Dep. Ex. 12.)

[9] The cases relied on by the Defendants in support of a more restrictive definition of the term "employer" are not dispositive, either because they do not involve claims under the North Carolina Wage & Hour Act, *see, e.g., Houpe v. City of Statesville*, 128 N.C. App. 334, 344-45, 497 S.E.2d 82, 89 (1998), or because the employee failed to allege that the individual defendants were employers. *See, e.g., Sides v. Duke Univ.*, 74 N.C. App. 331, 344-345, 328 S.E.2d 818, 828 (1985), *abrogated on other grounds by Kurtzman v. Applied Analytical Indus., Inc.*, 397 N.C. 329, 493 S.E.2d 420 (1997).

[10] *See generally Glenn v. Wagner*, 313 N.C. 450, 454-55, 329 S.E.2d 326, 330-31 (1985) (stating general legal principles for disregarding the corporate form or "piercing" the corporate veil).